**Jimmy S. BROWN, Plaintiff/Appellee,**

v.

**Betty P. BROWN, Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

July 2, 1993.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 4, 1993.

William Leech, Jr., Stephen W. Grace, Waller Lansden Dortch & Davis, Nashville, for plaintiff/appellee.

Thomas N. Bateman, Robert T. Bateman, Thomas N. Bateman, P.C., Clarksville, for defendant/appellant.

## OPINION

TODD, Presiding Judge.

The defendant, Betty P. Brown, has appealed from the judgment of the Trial Court overruling her motion for relief from a judgment granting the parties a divorce and approving their marital dissolution agreements.

On January 29, 1991, the Trial Court entered a final judgment which approved and incorporated a marital dissolution agreement executed by the parties on November 15, 1990, and a "Modification and Clarification of Marital Dissolution Agreement" executed by the parties on November 20, 1990. The provisions of said agreements will be detailed as necessary for the consideration of this appeal.

On January 13, 1992, defendant filed her motion pursuant to T.R.C.P. Rule 60.02 seeking relief from the January 29, 1991 judgment. The motion states no grounds for said relief, but refers to a "Memorandum of Law and Fact" filed with the motion which states that defendant was not represented by counsel in the divorce proceeding; that she received no disclosure of the worth of plaintiff but a statement that his financial status was not good and that she was receiving "all he could afford;" and that she signed the agreements because of threatened abuse; and that defendant received a total of $150,000.00 and plaintiff received a total of $3,000,000 as a result of the agreements and judgment.

Plaintiff responded, denying misrepresentation or duress, and asserting that a portion of the property claimed by defendant to be marital was, in fact, his separate property.

Defendant caused to be issued a subpoena duces tecum upon plaintiff and Peoples Bank and served notice of taking the deposition of Peoples Bank and plaintiff.

Plaintiff's motion to quash and for a protective order was sustained.

On October 7, 1992, the Trial Court entered judgment overruling defendant's motion for relief.

On appeal, the defendant presents three issues, the third of which complains of the action of the Trial Court in quashing the subpoenas and granting the protective order.

On March 9, 1992, plaintiff served notices of taking depositions of the Peoples Bank and plaintiff.

On March 10, 1992, the Trial Clerk issued a summons duces tecum to the Peoples Bank requiring production of all financial statements filed with the bank from 1980 "through the present."

On the same date, a subpoena duces tecum was served upon plaintiff to produce corporate income tax statements of Brown's Concrete and Block Company, Inc., for the years 1972–1985, inclusive.

On March 12, 1992, plaintiff moved the Trial Court for a protective order pursuant to Rule 26.03, T.R.C.P.

On April 24, 1992, the Trial Judge entered the following order:

This cause came on to be heard on the 27th day of March, 1992, before the Honorable Allen W. Wallace, upon motion to quash and for protective order of plaintiff Jimmy S. Brown, response of defendant Betty P. Brown, briefs and affidavits by the representative parties, and argument of counsel in open court, from all of which the Court is of the opinion that defendant Betty Brown's attempts to discover and depose Jimmy Brown and certain financial institutions are premature.

Further, the Court is of the opinion that, at this time, the depositions sought by defendant would be oppressive and would constitute an undue burden and expenses in the absence of sufficient evidence to set aside the decree for divorce entered by this Court.

It is, therefore, ORDERED, ADJUDGED and DECREED that plaintiff Jimmy Brown's motion to quash and for protective order is hereby granted pending further orders of this Court.

■ The issuance of a protective order limiting discovery lies within the sound discretion of the Trial Judge. *Loveall v. American Honda Motor Co.,* Tenn.1985, 694 S.W.2d 937.

In *Duncan v. Duncan,* Tenn.App.1990, 789 S.W.2d 557, a divorced wife sought relief from the division of marital estate under circumstances and on grounds similar to those in the present case. This Court held that the Trial Court unduly limited discovery by excluding discovery of post judgment sale of part of the estate, but further held that the error was harmless and affirmed the judgment denying relief.

In the present case, all information sought by discovery was information which was available prior to the divorce hearing and judgment. It was not material to the issue of relief under Rule 60.02 unless and until the defendant produced evidence that a fraudulent misrepresentation was made by the plaintiff to the defendant prior to the judgment with respect to the information sought. The Trial Judge referred to a "threshold" which was this requirement that, before discovery of detailed financial information, the defendant produce evidence of fraudulent misrepresentation of such information.

The only "threshold" (evidence of fraudulent misrepresentation) cited or found in the evidentiary record is testimony that:

1. Plaintiff told defendant that his financial condition was bad.

2. Plaintiff told defendant that she would receive all that he could afford.

■ This is simply not sufficient to justify a searching investigation of the business affairs of plaintiff which could have been made as a matter of right during the divorce proceedings. The expression, "all I can afford" is not sufficiently specific to form the basis of an accusation of fraud. Mere expressions of opinion do not give rise to an action of fraud. *McElroy v. Boise Cascade Corp.,* Tenn.App. 1982, 632 S.W.2d 127 and authorities cited therein.

If this record contained evidence that, prior to the divorce, plaintiff made to defendant any unequivocal statement of a specific material fact such as ownership or value of specific property, then defendant would be entitled to discovery evidence of the falsity of such statement. Absent such evidence, there is nothing for defendant to contradict in an effort to prove fraud, which, except for duress, is the only viable ground of relief asserted in the motion. The evidence sought was not shown to be material to the charge of duress.

No error is found in the action of the Trial Judge in quashing the subpoenas and granting a protective order.

■ Defendant's second issue is as follows:

Whether the trial court erred by overruling Wife's Motion for Relief from Decree under Rule 60, Tennessee Rules of Civil Procedure, when, but for, Husband's failure to disclose assets to the Wife; misrepresentation of the value of assets; failure to provide independent legal advice to Wife; and physical and mental abuse of Wife which caused duress; Wife would not

have executed the marital dissolution agreement.

Defendant cites an unreported decision in which the wife who was trusted by the husband to handle all finances failed to disclose a $13,000 out of town bank account. The evidence does not show a corresponding situation in the present case. The evidence shows that, prior to the divorce, defendant was employed at plaintiff's business and was fully aware of the nature of his various properties and business interests. There is no evidence that any such information was concealed from defendant. The only complaint is that plaintiff did not, without request, furnish full and exact details of the value of such properties and interests. With the defendant's general knowledge of the assets and her failure to demand financial details, there was no fraudulent concealment.

Defendant next complains that plaintiff did not provide her with competent legal advice. Legal counsel is generally a necessity in a divorce proceeding; and, upon request to the Court, a spouse may be required to furnish the financial means of obtaining counsel. However, no authority is known to this Court wherein a divorce was set aside solely because the successful spouse failed to furnish counsel to the unsuccessful spouse without request. Lack of counsel may be a supporting circumstance, but, standing alone, is not ground for invalidating an otherwise valid divorce decree.

Defendant asserts duress as ground for relief; and, if present, it could justify relief. *Gilley v. Gilley*, Tenn.App.1989, 778 S.W.2d 862.

Defendant's testimony on this subject is as follows:

Q. [By Mr. Bateman] Did he have any discussions with you about wanting you to get a divorce or anything of that nature?

A. Yes.

Q. What did he tell you?

A. He wanted a divorce, and I didn't want one, and he asked me—he kept asking me over and over again if I had talked to a lawyer, if I'd seen a lawyer. I said, "No."

Q. Was there any—did he take any action to induce you to get a divorce?

A. He was violent sometimes, and he threatened me.

\* \* \* \* \* \*

Q. (By Mr. Bateman) In connection with trying to get you to sign this marital dissolution agreement, did Mr. Brown do anything to you to cause you to do that?

A. He hit me a lot, shoved me around, screamed and hollered in my face, wouldn't let me out of the house, backed me into the corner where I couldn't get out.

Q. Did he tell you anything would happen to you if you didn't sign the marital disagreement?

A. Not exactly that way, no.

Q. Well, what did he do, if anything?

A. He just said he would torture me until I got out of his life and out of his face.

Q. Why did you sign the divorce papers when you did?

A. I was afraid not to.

Q. Why were you afraid?

A. Because of the situation with us.

Q. What was the situation?

A. What few times he did come home, he was usually angry.

\* \* \* \* \* \*

Q. (By Mr. Leech) He didn't use force or duress to get you to sign that agreement?

A. In the sense that you're saying it, if he forced my hand to sign it, no, he did not.

Q. Did he threaten you to sign; he didn't say he was going to do anything to you if you didn't, did he? He told you to see a lawyer—

\* \* \* \* \* \*

THE WITNESS: I'm trying. He did not force me to sign anything. But the stress and the emotional strain I was under the last year and a half that we were married, I wasn't capable of making a decision that I had to make.

\* \* \* \* \* \*

Q. [By Mr. Leech] But you didn't consult with a lawyer?

A. No, sir.

Q. But he encouraged you to?

A. He asked me to.

Q. Okay.

\* \* \* \* \* \*

Q. (By Mr. Bateman) All right, Ms. Porter, help me here if you would, please. What was it that was—that was—that he had done to you that was going on in your mind that made you think you had no choice but to sign that agreement?

A. I was afraid of him.

Q. You were what?

A. I was afraid of him.

Q. Why?

A. Because when he was drinking he was always violent, and I was afraid not to sign it.

The Trial Judge determined that the foregoing was not sufficient to invalidate a contract which had been approved by the Court and incorporated into the judgment of the Court. A number of circumstances support this conclusion.

1. The lack of overt threat of present harm.

2. The execution of successive instruments on the same subject. (The testimony does not reflect which instrument was induced by duress.)

3. The opportunity of appearing before the Trial Court on the day of hearing to fully inform the Court of the alleged duress in procurement of the instrument or instruments.

4. The Trial Judge was able to observe the attitude and demeanor of the witness and to judge the weight to be given to the conclusionary statements of the witness.

No error is found in the failure of the Trial Judge to grant relief upon the grounds stated in the second issue.

Defendant's first issue is as follows:

Whether the trial court erred by overruling Wife's Motion for Relief from Decree under Rule 60, Tennessee Rules of Civil Procedure, because the trial court entered a final decree of divorce based on the grounds of irreconcilable differences without either party appearing before the trial court; without either party presenting any testimony or evidence to the trial court; and, without holding any hearing before the final decree was entered.

T.C.A. § 36-4-103(b) provides in pertinent part as follows:

(b) No divorce shall be granted on the ground of irreconcilable differences unless the court shall affirmatively find in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties.

The divorce decree states:

It further appearing to the Court that the parties have entered into a Marital Dissolution Agreement and Modification and Clarification Agreement which the Court finds to be fair and equitable. Both Agreements are incorporated herein;

\* \* \* \* \* \*

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Marital Dissolution Agreement and Modification and Clarification Agreement executed by the parties and filed in the records is proper and equitable and the Court hereby approves, ratifies and confirms said Agreement and the conditions and provisions of said Agreement are made Orders of the Court.

Thus, the Trial Court did "affirmatively find in its decree—that the parties have made adequate and sufficient provision by written agreement—for the equitable settlement of any property rights between the parties."

The statute does imply that the Trial Court should satisfy itself as to the "finding" incorporated in the decree, but the means whereby the Court is to satisfy itself are not made clear. The evidence shows that neither party appeared before the Trial Court in connection with the divorce. The Trial Court

may have relied entirely upon the documents signed by the parties, and/or statements of counsel and/or other information. The record is silent in this regard.

In any event T.R.C.P. 60.02 does not contemplate the invalidation of a solemn judgment upon the unsupported allegation that the judge rendering the judgment did not make independent investigation of the fairness of documents signed by both parties.

Each of the defendant's issues has been examined without discovery of reversible error.

The judgment of the Trial Court is affirmed. Costs of this appeal are adjudged against the defendant. The cause is remanded to the Trial Court for collection of costs accrued in that Court and for any necessary further proceedings.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.