# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 13, 2000 Session

## LISA ANN VACCARELLA v. RAYMOND M. VACCARELLA

**Appeal from the Chancery Court for Williamson County**
**No. 24634    Russ Heldman, Chancellor**

---

**No. M1999-01937-COA-R3-CV - Filed February 9, 2001**

---

The unusual procedural history of this case presents for review the validity of the parties' marital dissolution agreement ("MDA") and the subsequent divorce decree entered by Judge Henry Denmark Bell[1] incorporating this MDA, as well as the court's decision regarding child custody, support, and visitation. After Wife filed Rule 59 and 60.02 motions for relief from her MDA, the second trial judge, Russ Heldman, determined that Tennessee Code Annotated section 36-4-103(b) requires a hearing prior to incorporating the signed marital dissolution agreement into a decree granting the parties an irreconcilable differences divorce. Judge Heldman further found the MDA to be invalid due to duress and violations of Wife's due process rights and vacated Judge Bell's decree granting the parties' divorce. We overrule the trial court on these issues and find the MDA signed by the parties, as well as the January 31, 1998 decree of Judge Bell granting final divorce, to be valid. We thus reinstate both the MDA and original decree. With regard to the issues of custody, visitation, and child support, we find substantial change in circumstances and affirm Judge Heldman's determinations on these issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part, and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and PATRICIA J. COTTRELL, J.J., joined.

Charles G. Blackard, III, Brentwood, Tennessee, for the Appellant, Raymond M. Vaccarella.

Mary Frances Lyle, Nashville, Tennessee, for the Appellee, Lisa A. Vaccarella.

## OPINION

---

[1] Judge Bell did not seek re-election in August 1998 and was succeeded on September 1, 1998 by Judge Russ Heldman.

CASE HISTORY

The parties were married in 1987 and are the parents of two minor children, Christopher, born in January 1988, and Andrea, born in April 1995. Lisa Vaccarella, ("Wife") filed for divorce in April 1997. However, parties remained residents of the same home until November 1997, when Wife vacated the premises pursuant to Judge Bell's order. Wife had filed a petition in October 1997 to have Raymond Vaccarella, ("Husband") removed from the marital residence. Following a hearing before Judge Bell, the judge determined that Husband should have exclusive possession of the marital residence and primary physical possession of the children until a final determination of all issues in the divorce. The parties were awarded joint temporary custody of the children. No transcript of that November 24, 1997 hearing was made, nor was a Tennessee Rules of Appellate Procedure 24(c) Statement of the Evidence filed by either party.

Parties, who were both represented by counsel, subsequently entered into mediation in an effort to settle their divorce. As a result of the mediation, an agreement was reached which was memorialized in a marital dissolution agreement (the "MDA") signed by both parties on January 29, 1998. This agreement was then presented to Judge Bell and incorporated into the Final Decree of Divorce on January 31, 1998.

Under the terms of the MDA, the parties shared joint custody and joint primary residence of the children. Husband had the responsibility to provide in-home daycare for the children by employing a nanny. Wife specifically agreed to no child support, waived any alimony, and received a lump sum settlement of $31,110, which included her portion of the equity in their marital residence.

On the 30th day after entry of the final decree, Wife filed Rule 59 and 60.02 motions for relief, and on the 31st day after entry of the final decree, Husband filed a petition requesting modification of custody. A hearing on these motions was set for 20 November 1998, at which time Judge Heldman determined that the previous divorce granted by Judge Bell might not be valid due to Judge Bell's failure to follow statutory procedure in the form of a full evidentiary hearing and written findings prior to granting the irreconcilable differences divorce. Judge Heldman then conducted a trial to determine the validity of the divorce decree and MDA and to resolve issues of child support, custody, visitation, alimony, and distribution of marital assets, including Husband's retirement and savings plan.

At the conclusion of the trial, the court vacated and set aside the parties' final decree of divorce finding: 1) that there was no "hearing" as required by Tennessee Code Annotated section 36-4-103(b); 2) that there was no affirmative finding in the decree that the parties had made adequate and sufficient provision by written agreement for the custody and maintenance of their children and for the equitable settlement of any property rights between the parties as required by section 36-4-103(b); 3) that Wife's Rule 59 motion was filed within thirty days as required by law, was well taken by the court, and was granted; 4) that the divorce decree was not a final judgment because the affirmative findings required by statute were not stated in the decree and did not exist in the record;

thus, the order adjudicated fewer than all the claims of the parties and was not a final decree under Tennessee Rules of Civil Procedure 54.02; 5) that Wife's due process rights were violated due to lack of notice that she might be removed from her home at the November 1997 hearing; 6) that Wife was under duress to sign the MDA due to her removal from the marital home and separation from her children as well as physical and verbal abuse from the husband; and 7) that Wife did not consent to the entry of the non-final decree of divorce.

The court then re-granted a divorce to the parties on the grounds of inappropriate marital conduct and granted custody of the children to Wife, setting standard visitation for Husband. The court found Husband's annual income to be $46,000 and Wife's annual income to be $16,000. Child support was set at $900 per month and rehabilitative alimony was granted to Wife at $400 per month for 44 months. Husband was to maintain insurance for the children and pay half of all health care expenses. Wife was further awarded one-half of Husband's retirement pension and thrift savings plan; the marital home was awarded solely to the husband, and he was ordered to pay Wife $10,000 in attorney's fees.

DISCUSSION

I.

Our standard of review under Tennessee Rules of Appellate Procedure 13(d) is to review the record *de novo* with a presumption of correctness unless the evidence preponderates against the court's decision. Thus, "[w]e must presume the trial court's decision is correct unless the evidence preponderates against it." *Hawkins v. Hawkins*, 883 S.W.2d 662, 625 (Tenn. Ct. App. 1994). However, if "outcome-affecting errors are found," we are required to grant appropriate relief to the aggrieved party. *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994). In this matter, we find the trial court in error with regard to its interpretation and application of Tennessee Code Annotated section 36-4-103 (1996)[2] and its procedural requirements for granting a divorce on the grounds of irreconcilable differences.

The parties were before Judge Heldman as a result of Wife's Rule 59 and 60.02 motions for relief and Husband's petition requesting modification of custody. As Wife's motion had been filed within thirty days of the entry of the divorce decree, it was found to be a Rule 59 Motion to Alter or Amend as a matter of law. "The motion to alter or amend allows the trial court to correct any errors as to the law or facts that may have arisen as a result of the court overlooking or failing to consider matters." *Chadwell v. Knox County*, 980 S.W.2d 378, 383 (Tenn. Ct. App. 1998). These motions "may be granted (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice. They should not, however, be granted if they are simply seeking to relitigate matters that have already been adjudicated." *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998). In the case at bar, there was no

---

[2] The section was superceeded by the 2000 Supplement to the Tennessee Code, but only minor changes were made to Section 36-4-103 and no changes were made to language pertinent to the case at bar.

relevant change of law; no new evidence became available, and we find no error of law or fact, nor any injustice, in Judge Bell's original decree granting the parties' divorce. Thus, we vacate Judge Heldman's order setting aside the divorce decree of Judge Bell under Tennessee Rules of Civil Procedure 59.

A.

Judge Heldman based his ruling, in part, on his determination that incorrect procedures were followed by Judge Bell in granting this divorce. Judge Heldman criticized three areas of procedure: the lack of formal hearing, the lack of formal written findings, and the non-final nature of Judge Bell's decree due to a determination of less than all issues presented. His order of 15 September 1999 states as follows with regard to these issues:

> 1. There occurred no "hearing" as clearly *required* by T.C.A. 36-4-103(b) before the irreconcilable differences divorce was granted.
> 2. There was no affirmative finding "in the decree" as expressly *required* by T.C.A. 36-4-103(b) "that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties." Regardless of what is stated in any marital dissolution agreement between the parties, a Tennessee decree of divorce on the grounds of irreconcilable differences *must* contain those findings if there are minor children of the parties.
> . . .
> 4. Ms. Vaccarella met her burden of proof under T.R.C.P. 59 for the Court to sustain claims in her proposal for relief introduced into evidence at trial. The evidence clearly and convincingly showed that the marital dissolution agreement incorporated into the non-final decree did *not* make adequate and sufficient provision for the custody and maintenance of the Vaccarella children and for the equitable settlement of the parties' property rights. The agreement was clearly inadequate and insufficient as to child custody, child support and division of marital property as well as spousal support or alimony according to Tennessee law. Ms. Vaccarella's Rule 59 motion was granted.
> 5. The decree of divorce was *not* a final judgment at least because the affirmative statutory findings were not stated in the decree and did not exist in the record at all. Therefore, pursuant to T.R.C.P. 54.02, "any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision *at any time* before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added). Regardless of how the decree was denominated, without the required statutory findings on its face, the decree was interlocutory, not final, as a matter of law. By authority of T.R.C.P. 54.02 and *Fox v. Fox*, 657 S.W.2d 747 (Tenn. 1983), a trial judge has the authority, if not duty, to

revise, alter, amend, correct, vacate or set aside a *non-final* decree, order or judgment "at any time" consistent with procedural due process standards if it clearly appears that such action is required according to law, is necessary to cure a prejudicial constitutional violation or is necessary to correct or avoid a violation of law.

Judge Heldman specifically relied on the language in Tennessee Code Annotated 36-4-103(b) & (c) in making his decision and stated as follows:

> T.C.A. 36-4-103 authorizes a divorce on the ground of irreconcilable differences if certain specific conditions or requirements are met. This statute uses the word "heard" twice in subsection (c)(1), the word "hearing" in subsection (c)(2) and the words "at the hearing" in subsection (b). The word "hearing" in subsection (b) is used in context with the Court's affirmative and independent duty to find in its irreconcilable differences judgment "that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties." "Hearing" has been defined as a "proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and evidence presented."

The court went on to create a new procedural rule for an irreconcilable differences divorce requiring a hearing where "[o]nly one party to the divorce need be present at the hearing, although both parties may be present."

The plain reading of section 36-4-103(b) and (c) does not require a formal hearing unless the court finds that the parties have not made adequate and sufficient provision for the custody and maintenance of their children and the equitable settlement of any property rights. In such cases, a hearing may be had to ratify any amendments to the original agreement. This section also provides that:

> (d)(1) A bill of complaint for divorce . . . may be taken as confessed and a final decree entered thereon, as in other cases and without corroborative proof or testimony . . . .
> (2) For purpose of this section "without corroborative proof or testimony" means that the petitioner shall not be required to testify as to the material facts constituting irreconcilable differences or any attempts to reconcile such differences.

> (e) . . . [A] divorce may be granted on the grounds of irreconcilable differences where there has been a contest or denial, if a properly executed marital dissolution agreement is presented to the court.

Tenn. Code Ann. § 36-4-103(e)(Supp. 2000). Pursuant to the statute, this Court has held an irreconcilable differences divorce valid where neither party appeared before the trial court, neither

party presented any testimony or evidence to the trial court, and no hearing was had before the final decree was entered. *See Brown v. Brown*, 863 S.W.2d 432 (Tenn. Ct. App. 1993).

The Tennessee Code does not require the court to complete an independent investigation prior to signing the parties' divorce decree. The trial judge in *Brown* stated in that divorce decree only that the marital dissolution agreement was "proper and equitable and the Court hereby approves, ratifies, and confirms said Agreement." *Brown*, 863 S.W.2d at 436. Of the language in that decree, this Court held that "the Trial Court did 'affirmatively find in its decree - that the parties have made adequate and sufficient provision by written agreement - for the equitable settlement of any property rights between the parties,' " even though there was no specific finding that the MDA was "adequate and sufficient." *Id.*

> The statute does imply that the Trial Court should satisfy itself as to the "finding" incorporated into the decree, but the means whereby the Court is to satisfy itself are not made clear. The evidence shows that neither party appeared before the Trial Court in connection with the divorce. The Trial Court may have relied entirely upon the document signed by the parties, and/or statements of counsel and/or other information. The record is silent in this regard.

> In any event T.R.C.P. 60.02 does not contemplate the invalidation of a solemn judgment upon the unsupported allegation that the judge rendering the judgment did not make independent investigation of the fairness of documents signed by both parties.

*Id.* at 436-437.

As in the case of *Brown*, Judge Bell did not use the magic words "adequate and sufficient," nor did he discuss the specifics of the child custody, maintenance, and property settlement agreements between the parties. However, the final decree states "that the parties hereto have entered into a written Marital Dissolution Agreement, a copy of which has been filed with the court, and that said Marital Dissolution Agreement, as executed by the parties, is **fair and just and equitable and is in the best interest of said parties involved**." (Final Decree at 1)(emphasis added). Judge Bell went on to say that the marital dissolution agreement was approved and ratified in full and given full force and effect. If the parties had wished to request a hearing at the time the judge signed the final decree, they were free to do so. However, the parties chose to settle their differences through written agreement and forego their right to a hearing.

As we find that Tennessee Code Annotated section 36-4-103 was substantially complied with and that the written affirmative findings made by the judge were adequate, Judge Bell's order was not an "interlocutory order" which "litigated fewer than all issues presented before him." Thus, the order entered by Judge Bell was a final order; once the gavel went down the MDA merged into the final decree.

B.

Judge Heldman also found that Ms. Vaccarella's due process rights were violated when she was removed from the marital residence in November of 1997. "This caused her to be deprived of occupancy of her residence and 'the custody, companionship, and care' of her children in the manner to which she has been accustomed, without notice and therefore without due process of law." (Supp. Order to Final J. at 2.) We find this assertion to be totally without merit. Judges in domestic relation cases have broad discretion to fashion an appropriate remedy considering all of the circumstances of an individual case. As such, Ms. Vaccarella entered into Judge Bell's court requesting a remedy for the inability of Husband and Wife to continue to live in the same residence. Ms. Vaccarella cannot now complain that the remedy fashioned by the court was not the specific one requested by her.

Further, no transcript of this proceeding was made nor was an offer of proof filed into the court. Thus, the determination of the trial court is presumed to be correct. "When the record is incomplete, or does not contain the proceedings relevant to an issue, this Court is precluded from considering this issue. Furthermore, this Court must conclusively presume that the ruling of the trial court was correct in all particulars." *State v. Gibson*, 973 S.W.2d 231, 244 (Tenn. Crim. App. 1997); *See also Humphrey v. Humphrey*, No. 01-A-01-9802-CV-0010, 1999 WL 452318, at * 2 (Tenn. Ct. App. July 1, 1999).

C.

After hearing all the evidence in this matter, Judge Heldman found that Wife signed the MDA under duress and that this duress was sufficient to set aside a "non-final decree incorporating said agreement and to hear the divorce action anew." A large part of this duress was the "unlawful or unconstitutional taint," caused by violation of Ms. Vaccarella's due process rights. However, as we find no such constitutional or legal violation, it cannot be said to have contributed to Ms. Vaccarella's duress. The parties in this matter were both represented by counsel and participated in mediation with a licensed and trained mediator. The fact that Ms. Vaccarella perceived her chances for obtaining custody of her children as poor, and thus signed an agreement that she later regretted, is an unfortunate situation. However, this is hardly a case of "injustice," "clear error of law" or duress.

D.

Judge Heldman's final reason for invalidating Judge Bell's divorce decree and the marital dissolution agreement was his assertion that the parties did not consent to the divorce decree "at the very moment" the decree was signed by the judge. Judge Heldman relied on the case of *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, (Tenn. 1997), wherein the trial court had noticed that one party no longer consented to the signed agreement. Such is not the Vaccarellas' case.

The court entered its decree two days after the parties signed their marital dissolution agreement. There was no indication from either party that consent had been withdrawn, nor is there

any credible evidence now that Wife would have withdrawn her consent or not signed the MDA had this matter come before the judge. In her testimony, Wife merely stated that she 'might not' have signed the MDA. Further, it was thirty-one days after she signed the MDA that she filed any documents with the court evidencing her remorse over signing the document. Thus, we conclude that Wife's consent had not been withdrawn on the date the court signed its decree.

## II.

Both parties in this matter agree that the arrangement of joint custody and joint primary residence provided for in the MDA was not working, thus there is evidence of substantial change in circumstances which would warrant a modification of the child custody and support obligations. *Dodd v. Dodd*, 737 S.W.2d 286 (Tenn. Ct. App. 1987); *Dalton v. Dalton*, 858 S.W.2d 324 (Tenn. Ct. App. 1998). The trial court was correct to hear evidence and undertake to determine what new custodial arrangement would be in the best interests of the children. In making this determination, the court determined these children would be better off in the primary care and custody of their mother.

> Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than the others.
> . . .
> . . . [T]he details of custody of and visitation with children are peculiarly within the broad discretion of the Trial Judge whose decisions are rarely disturbed.

*Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973).

> The matter is to be reviewed by us *de novo* with a presumption of correctness of the ruling of the trial judge.

*Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983).

In the case at bar, Judge Heldman specifically found that both parents were good parents. However, the court, having the opportunity to hear all witnesses and judge their credibility, determined that "Ms. Vaccarella was very credible." The trial court, over several pages, specifically set out its reasons for finding Wife the more fit parent in this circumstance. These findings included clear and convincing evidence that Husband was guilty of physical and mental abuse and that Wife had been the primary care giver for the children for the majority of their life (specifically with regard to their youngest daughter, Andrea, who had cystic fibrosis and required an enormous amount of special care). He relied heavily on Wife's testimony, which was very exhaustive and descriptive, regarding her care of Andrea and found this testimony "compelling." Although the judge thought this to be a close custody case and stated specifically that Husband was not a bad father, he ultimately made the determination that Wife was the more fit parent. We find that the evidence does not preponderate against this ruling. The court was within its discretion to also modify child support, as none was provided for in the marital dissolution agreement. *See Blackburn v. Blackburn*, 526 S.W.2d 463 (Tenn. 1975). We affirm the trial court's determination to award child support based

on the Tennessee Child Support Guidelines in the amount of $900 per month. We further affirm the court's award of standard visitation to Husband.

## III.

As the court had vacated the previous marital dissolution agreement and subsequent decree incorporating the MDA, it relitigated the alimony and property settlement issues. All determinations by Judge Heldman regarding matters of alimony and property settlement are hereby vacated and the original order incorporating the marital dissolution agreement dealing with these issues is reinstated. We find that all rights of the parties were determined by the MDA and the MDA was merged into Judge Bell's final decree of divorce. *See Brewer v. Brewer*, 869 S.W.2d 928 (Tenn. Ct. App. 1993). Further, as no alimony was awarded to Wife in the MDA, the issue of alimony is not modifiable. Only an award of periodic alimony can be modified by the court. *Brewer,* 869 S.W.2d.at 935; *see also Towner v. Towner*, 858 S.W.2d 888, 889-891 (Tenn. 1993). Wife is not required to reimburse Husband for any payments of alimony already received. She may retain whatever amounts were paid to her under Judge Heldman's orders.

## IV.

Appellant's brief also requested review of the trial court's alleged appointment of civil counsel for Ms. Vaccarella, but there is nothing in our record regarding whether or how such an appointment of counsel was made. Thus, without a record to review, this issue is clearly not currently before the Court. However it is obvious that there is no constitutional right to counsel in a civil matter of this nature. Therefore, any such appointment would be made without authority.

## V.

The trial court awarded attorney's fees to Wife in the amount of $10,000 to be paid by Husband. Although "[t]he decision to award attorney's fees to a party in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal unless the evidence preponderates against such a decision," *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992), we find the circumstance here to be one wherein the trial judge abused his discretion. Attorney's fees should have been denied to both parties.

Wife presented a motion to the court as a result of her second thoughts over obtaining what she perceived to be a bad bargain on advice of her original counsel. As a result, an enormous amount of unnecessary litigation has resulted, and we have ultimately reversed a large portion of the trial court's decision. Thus, both parties have been partially successful on appeal. These facts preponderate against the award of attorney's fees to either party. *See Id.* at 598. We reverse the trial court's decision to award attorney's fees in this matter.

CONCLUSION

We find the trial court's interpretation of Tennessee Code Annotated Section 36-4-103 requiring a hearing prior to an irreconcilable differences divorce where the parties have signed a Marital Dissolution Agreement to be incorrect and we reverse the trial court on this matter. The Code section does not require such hearing nor is the court required to make an independent investigation prior to signing the parties' divorce decree. Judge Bell substantially complied with the requirement that the MDA be adequate and sufficient by stating that it was fair, just and equitable and in the best interest of all the parties. We find this language to be sufficient.

Ms. Vaccarella's due process rights were not violated when Judge Bell awarded primary occupancy of the marital residence to the Husband, as well as primary custody of the children, until a formal hearing could be heard in this divorce. As no record was made of the proceeding in this matter, this Court is precluded from considering this issue and must conclusively presume that the trial court was correct in its decision. Thus, Judge Heldman's determination that Wife's constitutional rights were violated is reversed. We further find that Wife was under no duress at the time she signed the Marital Dissolution Agreement. She did so willingly and voluntarily, negotiating this agreement with the help of a trained mediator and her attorney. Therefore, there was no injustice to Ms. Vaccarella, she was under no duress when she signed the Marital Dissolution Agreement, and Judge Bell committed no clear error of law. Ms. Vaccarella's Rule 59 Motion to Alter or Amend was incorrectly granted and the trial court's decision to grant her Rule 59 relief is hereby reversed. Judge Bell's Final Decree of Divorce dated 31 January 1998 and the Marital Dissolution Agreement incorporated therein are hereby reinstated.

We do find there was a substantial change of circumstances warranting a modification of child custody and support, as the custody arrangement in the Marital Dissolution Agreement was not working. The evidence does not preponderate against Judge Heldman's determinations with regard to custody and support, and his judgment is hereby affirmed on those issues. Wife will retain primary physical custody of the children while Husband will continue with standard visitation and pay child support based on the Tennessee Child Support Guidelines.

With regard to alimony currently being paid to Wife, these payments will cease, as Judge Bell's original order incorporating the parties' Marital Dissolution Agreement is conclusive on all issues of alimony and property division. Wife is not entitled to any further alimony. She will not be required to reimburse amounts already paid.

Finally, we reverse the trial court's determination to award attorney fees in this matter and decline to award any additional attorney's fees incurred in pursuing this appeal.

_____
WILLIAM B. CAIN, JUDGE